IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| GEORGE MARTIN, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) CIV. ACT. NO. 1:21-cv-460-TFM-MU |
| | ) |
| JOHN HAMM, Commissioner, Alabama | ) |
| Department of Corrections,[1] | ) |
| | ) |
| Respondent. | ) |
| | ) |

**MEMORANDUM OPINION AND ORDER**

On January 18, 2024, the Magistrate Judge issued a Report and Recommendation which recommends Petitioner's habeas claims be denied without an evidentiary hearing and that he be granted a certificate of appealability on two specific issues. (Doc. 27). Petitioner (Martin) and Respondent (the State) both timely filed objections (Docs. 32, 33) and responses to each other's objections (Docs. 34, 35). Martin also filed a reply in support of his objection. (Doc. 36). The Report and Recommendation and underlying habeas petition are ripe for review.

        **I.**     **DISCUSSION AND ANALYSIS**

Martin's case is troubling. The *Brady* violations that occurred during his first trial, and the probable impact those violations had on Martin's ability to investigate leads and present the most vigorous defense possible, are not lost on this Court. Nor does the Court question Martin's strong desire to expose those *Brady* violations to a jury. However, neither the Court's apprehension about how the Alabama courts handled those *Brady* violations nor its sincere appreciation of Martin's

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), the Court **DIRECTS** the Clerk of Court to substitute John Hamm, the current Alabama Department of Corrections Commissioner, in place of Jefferson Dunn, the former commissioner, as the named respondent in this action.

situation are enough to grant habeas relief. The standard for habeas relief set by 28 U.S.C. § 2254 is "difficult to meet" and "it was meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). Habeas relief is not justified simply because this Court might have decided Martin's constitutional claims differently—or even if the Court was convinced the Alabama courts were wrong. *See Reaves v. Sec'y, Fla. Dep't of Corr.*, 872 F.3d 1137, 1156 (11th Cir. 2017) (citations omitted). The Court may only grant habeas relief if the strict requirements of 28 U.S.C. § 2254 are satisfied. Controlled by this standard, the Court agrees with the Magistrate Judge that Martin has not proven his right to habeas relief. The parties' objections to the Report and Recommendation are addressed below.

**A. The Court agrees Martin's Sufficiency Claim is unexhausted and procedurally defaulted. Alternatively, it fails on the merits.**

Martin's first objection relates to his Sufficiency Claim. He says the Magistrate Judge wrongly concluded the Sufficiency Claim was unexhausted and procedurally defaulted and argues instead that the Sufficiency Claim should be reviewed on the merits and granted. (Doc. 32 at 7-13). Alternatively, Martin requests a certificate of appealability on the issue. Martin's objections are overruled, but his request for a certificate of appealability is granted.

For starters, this Court agrees with the Magistrate Judge that Martin's Sufficiency Claim is unexhausted and procedurally defaulted. (*See* Doc. 27 at 9-14). Although Martin challenged the sufficiency of the State's pecuniary-gain evidence throughout the Alabama state courts, he never raised the issue as a <u>federal</u> one until coming to this Court with his habeas petition. This means the claim is unexhausted. And because the Sufficiency Claim would be barred in Alabama state court now, it is also procedurally defaulted. Without proof of cause-and-prejudice or actual innocence, which Martin has not provided, the Sufficiency Claim must be dismissed.

Martin argues that his case is like *Vazquez v. Sec'y, Fla. Dep't of Corr.*, 827 F.3d 964 (11th

Cir. 2016), where the Eleventh Circuit found error with the district court's *sua sponte* dismissal of a habeas claim as unexhausted despite the state having expressly waived any exhaustion argument. (Doc. 32 at 8). The Court finds *Vazquez* distinguishable. In *Vazquez*, the state very specifically admitted that "…the claims were fairly presented to the state court and are exhausted". 827 F.3d at 966 n. 1. The State never made such a clear waiver in Martin's case though. Admittedly, the State acknowledged that Martin *raised* the sufficiency issue in the Alabama courts, and the State addressed the merits of that claim in its response to the habeas petition, but the Court does not see where the State ever expressly waived exhaustion like the state did in *Vazquez*. The Court declines to read the State's acknowledgment that an issue was raised in state court as a complete waiver of an exhaustion defense. Raising an issue in state court does not equate to exhausting it. Accordingly, *Vazquez* does not change the Court's opinion that Martin's Sufficiency Claim is unexhausted and procedurally defaulted.

Martin also relies on *Mulnix v. Sec'y for the Dep't of Corr.*, 254 F. App'x 763 (11th Cir. 2007), to suggest that a federal claim is necessarily exhausted where a petitioner has exhausted a state law claim with the same legal standard. (Doc. 32 at 9). However, *Mulnix* is an unpublished decision that was criticized later in *Preston v. Sec'y, Fla. Dep't of Corr.*, 785 F.3d 449, 460 (11th Cir. 2015), a published, precedential decision. *Preston* directs that "it is not at all clear that a petitioner can exhaust a federal claim by raising an analogous state claim" and "simply mentioning a phrase common to both state and federal law, like 'sufficiency of the evidence,' cannot constitute fairly presenting a federal claim to the state courts." *Preston*, 785 F.3d at 460; *see also Cascante v. Florida*, 816 F. App'x 429, 431 (11th Cir. Aug. 14, 2020) (per curiam) (discussing *Preston* and ruling that federal claims were not exhausted where the petitioner had not raised any federal claims or cited to any federal cases in state court); *Mingo v. Dixon*, Case No. 21-cv-60263, 2022 WL

2208918 at *5 n. 6 (S.D. Fla. June 21, 2022) (unpublished) (discussing the Eleventh Circuit's criticism of *Mulnix*). *Mulnix* does not persuade the Court that Martin's Sufficiency Claim has been exhausted.

However, since Martin insists the Alabama Court of Criminal Appeals (ACCA) adjudicated his federal insufficiency claim on the merits, and that it did so incorrectly, this Court writes to the merits of that claim too. In the Court's view, even if Martin's Sufficiency Claim was exhausted, it would still fail.

To elaborate, in order for Martin to be entitled to habeas relief on his Sufficiency Claim, this Court must decide that the Alabama courts' denial of that claim resulted in a decision that was either contrary to or an unreasonable application of "clearly established Federal law," or was based on an unreasonable determination of facts in light of the evidence. 28 U.S.C. § 2254(d)(1)-(2). The "clearly established Federal law" relevant to Martin's Sufficiency Claim comes from *Jackson v. Virginia*, 443 U.S. 307 (1979).

In *Jackson*, the Supreme Court held that, in an appeal challenging the sufficiency of evidence against a defendant, the "critical inquiry" is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. at 318-19. The *Jackson* court noted further that it is the trier of fact's duty "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts and ultimate facts," and that a reviewing court should not substitute its judgment for that of the trier of fact. *Id*.

The ACCA rejected Martin's argument that the State failed to prove he killed Hammoleketh for pecuniary gain. Specifically, the ACCA ruled:

> Viewed in the light most favorable to the State, the evidence offered by the State was sufficient to establish a prima facie case of capital murder -- specifically,

murder for pecuniary gain. Evidence was presented that the scene was staged to look like an accident and that the fire was not a result of a collision but, instead, had originated in the back passenger floorboard. One of the reasons investigators believed that the fire was not the result of an accident was because of the smell of gasoline in the rear passenger floorboard, which was full of paper debris.

Martin insisted to investigators that the fire was a result of an accidental collision. The State presented evidence of an investigation report prepared by Martin approximately one year prior to the death of his wife. The report involved a traffic accident in which a vehicle left the road, hit a tree, and burst into flames. Martin's version of what occurred in this case was strikingly similar to the report of the incident one year prior. Given the evidence presented, including the position of the body in the vehicle, the jury could have reasonably concluded from the evidence that Hammoleketh died as a result of a homicide and not an accident.

Martin's brief on appeal attempts to cast his marriage to Hammoleketh as a loving relationship, yet the State's evidence indicates that Martin and Hammoleketh had marital problems. Martin himself admitted to physical altercations with Hammoleketh, and Joseph Petties, a friend of the Martins, testified that he had observed what appeared to be fist holes in some interior doors of the Martin residence. Further, Martin was involved in an extramarital affair. After Hammoleketh's death, Martin did not inform investigators of the affair when questioned and told Creer not to tell anyone about their affair.

Martin was the last known person to see his wife alive. When officers arrived around 2:00 a.m. at the Martin residence a few hours after the fire, Martin was not at home and, when questioned upon his return, he stated that he did not know his wife's whereabouts at the time. Martin admitted that the disposable lighter found on the ground at the scene was his and attempted to explain its presence by claiming that his wife used it as a flashlight even though the couple had working flashlights at the residence. The lid to a match container was also found on the ground near Hammoleketh's vehicle. Martin stated that it could belong to him because he kept it on top of the washing machine in the laundry room and opined that his wife had accidentally picked it up when she gathered up items to donate to charity.

There was testimony from Taylor that a state trooper vehicle was in the area of Hammoleketh's vehicle around 9:00 p.m. the night of the fire. The trooper was parked without any lights on, and when Taylor's headlights lit up the interior of the car, Taylor saw a black man in the front seat. Police could not locate another state trooper who was in the area during that time.

Finally, Martin did not disclose all the insurance policies on Hammoleketh when asked to provide them to the police. Several policies existed, totaling a payout of $377,000 upon Hammoleketh's death. One large policy would pay in the event that Hammoleketh was killed in a vehicular accident. Martin insisted that Hammoleketh

> had been killed in a fire caused by a vehicular accident -- an accident similar to one Martin had previously investigated.

(Doc. 16-49 at 12-15). Viewing the evidence in the light most favorable to the State, in compliance with the *Jackson* standard, the ACCA said the State's evidence was sufficient to establish a prima facie case of murder for pecuniary gain, concluding that evidence of Martin's motive, the fact that Martin was the last person to see Hammoleketh alive, Martin's false explanations about facts relevant to the investigation, and circumstances connecting Martin to Hammoleketh's death were enough to strengthen the circumstantial evidence against him. (Doc. 16-49 at 14). Put simply, there was enough evidence, in the ACCA's view, for the jury to reasonably conclude that "the State's case excluded every reasonable hypothesis except that of Martin's guilt." (Doc. 16-49 at 14). Martin says this was both an "unreasonable determination of the facts in light of the evidence" in violation of § 2254(d)(2) and a decision that was "contrary to" or "an unreasonable application of" federal law in violation of § 2254(d)(1). (Doc. 1 at 88). The Court disagrees.

The essence of Martin's argument is that the State relied on the mere existence of insurance coverage to prove pecuniary gain when, as Martin puts it, "the evidence all showed" that the Martins carried routine amounts of coverage, that Hammoleketh had taken out most of her life insurance on herself without Martin's involvement, and that the Martins were in good financial health. (Doc. 1 at 89). These circumstances, Martin thinks, undermine the jury's conclusion that he killed Hammoleketh for pecuniary gain, and it was unreasonable for the ACCA to conclude otherwise.

The Court disagrees with Martin's interpretation of the evidence. The State did not, as Martin argues, rely solely on the existence of insurance coverage. As the ACCA explained, the jury also heard evidence of the following:

- that Hammoleketh's crash had been staged;

- that Martin had worked an almost-identical accident the year before;

- that the Martins had marital problems;

- that one witness had seen fist holes in doors at the Martins' home;

- that Martin failed to disclose an extramarital affair he was involved in;

- that Martin was the last person to see Hammoleketh alive; and

- that Martin admitted that a disposable lighter and a lid to a match container found at the scene of Hammoleketh's death potentially belonged to him.

(Doc. 16-49). This evidence contradicts Martin's assertion that the *only* evidence against him was the fact that he and Hammoleketh carried insurance.

Furthermore, although Martin maintains that he and Hammoleketh were in good financial health, there was adequate evidence for the jury to find otherwise. The defense's own accounting expert testified that the Martins had "a lot of credit" including "six or seven active credit cards" with balances, that the balances "ranged from a couple of hundred bucks to $4,000" and that a "couple of credit cards were close to the limits" (Doc. 16-44 at 4-5). The same witness testified that the Martins' total debt was around $53,500, which the Court notes significantly exceeded Martin's annual income at the time (Doc. 16-29 at 17). Additionally, the Martins had taken out a second mortgage to consolidate some credit card debt, and Hammoleketh was unemployed when she died. (*See* Doc. 16-44 at 2, 14-15, 17).

Finally, despite Martin's insistence that his and Hammoleketh's insurance coverage was reasonable, there was sufficient evidence for the jury to question this conclusion too. Sure, the defense's insurance expert testified that the Martins' insurance coverage was in a proper range (Doc. 16-44 at 66), but other evidence could have caused the jury to question whether the coverage amounts were suspicious. More specifically, the evidence showed that insurance coverage for both Martin and Hammoleketh had increased significantly prior to her death and that the couple carried

around $375,000 in coverage on Hammoleketh in 1995 (the year of her death) when she was not even working at the time. (Doc. 16-44 at 55, 87). Moreover, even though Martin maintains that Hammoleketh initiated most of the increases in coverage (Doc. 32 at 12), the jury heard testimony from Charles McFadden, the State's insurance-focused witness, that he could not say for sure that Hammoleketh was the one who took out one of the policies or whether Martin was present when she did so (Doc. 16-41 at 182-83). In light of all the other evidence the jury heard, the jury could reasonably have questioned whether Martin influenced the coverage increases, even if his signature did not appear on some of the documents.

In short, the Court disagrees with Martin's persistence that the only evidence against him was the existence of insurance coverage, and the Court declines to find that the Alabama courts' rejection of his sufficiency claim was contrary to or an unreasonable application of *Jackson* or was based on an unreasonable determination of facts. For this reason, even if Martin's Sufficiency Claim were exhausted and not procedurally defaulted, the Court would dismiss the claim on its merits.

The Court does, however, find that a certificate of appealability is appropriate on three additional issues: (1) whether the State waived any exhaustion defense to the Sufficiency Claim by acknowledging that the claim "was presented on direct appeal" in its response to the petition; (2) whether Martin exhausted his Sufficiency Claim in state court by bringing state law claims based on the same "reasonable doubt" standard applicable to federal claims; and (3) if the Sufficiency Claim was exhausted, whether the Alabama courts' conclusion that the State sufficiently proved that Martin committed murder for pecuniary gain was contrary to, or involved an unreasonable application of, clearly established federal law or was based on an unreasonable determination of facts in light of the evidence. (*See* Doc. 32 at 13-14). Accordingly, the Court will

grant these appealable issues in addition to those already recommended by the Magistrate Judge.

**B. The Court agrees that Martin's Confrontation and Complete Defense Claims fail on the merits.**

Martin also objects to the Magistrate Judge's recommendation that his Confrontation and Complete Defense claims be dismissed on the merits. His objections are overruled.

First, the Court agrees with the Magistrate Judge's conclusion that Martin's Confrontation and Complete Defense Claims were adjudicated on the merits in the Alabama courts. (Doc. 32 at 14-17). Martin presented his Confrontation and Complete Defense Claims at each level of the Alabama state courts, and the ACCA denied those claims substantively, not on any procedural ground. This creates a rebuttable presumption that Martin's claims were adjudicated on the merits, a presumption Martin has not overcome. AEDPA deference applies to those claims.

Second, the Court disagrees with Martin's insistence that the State "forfeited on the merits" of the Confrontation and Complete Defense claims. (Doc. 32 at 5, 17-18, 46). Martin contends the State sacrificed any right to defend his claims on the merits by focusing its response on a procedural default defense, rather than analyzing the merit of those claims. He relies on two cases – *United States v. Levy*, 379 F.3d 1241 (11th Cir. 2004), and *United States v. Campbell*, 26 F.4th 860 (11th Cir. 2022) – to support this argument. (Doc. 32, p. 18). The Court is unpersuaded. First, *Levy* and *Campbell* were appellate-level cases where the Eleventh Circuit examined whether it could *sua sponte* address legal issues or defenses on appeal that parties had not squarely presented in their briefs. Martin does not explain why these appellate-level cases should extend to this Court's analysis of the merits of his habeas claims at the district court level. Second, the State <u>did</u> argue—on the second page of its response—that Martin's claims are "without merit," which further undermines Martin's suggestion that the State abandoned its defense of his claims on the merits. (Doc. 16 at 2).

Even if the State's merit-based defense should have been more robust, which the Court agrees it could have been, there was no error in the Magistrate Judge's consideration of this issue. The Magistrate Judge did not *sua sponte* raise new claims or defenses, but rather identified and applied the proper law to Martin's claims. *See Pye v. Warden, Georgia Diagnostic Prison*, 50 F.4th 1025, 1035 n. 2 (11th Cir. 2022) ("And of course, once 'an issue or claim is properly before the court'—as Pye's entitlement to relief under 28 U.S.C. § 2254 plainly is—"the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law.") Martin's attempts to win by default fail.

Third, the Court agrees with the Magistrate Judge's analysis of the Confrontation and Complete Defense Claims on the merits and with the recommendation that those claims be dismissed. Martin's objection focuses significantly on how the Preclusion Order prejudiced him, arguing that it prevented him from showing the jury that the State knew its case against him was weak, that the State willfully buried evidence that might have been favorable to him, and that the State's misconduct kept him from pursuing potentially exonerating leads. (Doc. 32 at 19). But even if those things are true, that does not mean that Martin has proven his right to habeas relief on his Confrontation and Complete Defense Claims. To satisfy the strict standards of AEDPA, the Court must find that established Supreme Court precedent "clearly require[d] the state court" to have adopted a different result on claims. *Bowen v. Sec'y, Fla. Dep't of Corr.*, 92 F.4th 1328, 1332 (11th Cir. 2024) (quoting *Kernan v. Cuero*, 583 U.S. 1, 3, 138 S.Ct. 4, 199 L.Ed.2d 236 (2017) (per curiam)). For the reasons explained in the Report and Recommendation and adopted here, the Court cannot say that the Alabama courts' rejection of Martin's Confrontation and Complete Defense claims were contrary to, or an unreasonable application of, established Supreme Court

law, nor were those decisions based on unreasonable determinations of fact, even if this Court may have resolved those issues differently.[2]

Finally, a word on Martin's assertion that the Preclusion Order was "beyond reason" and resulted in an "arbitrary and disproportionate denial of" Martin's defense theory. (Doc. 32 at 41-42, 47, 49-53). The record shows that much of the State's misconduct was linked to one person—Major Thomas Calhoun, "the case officer and primary investigator" on Martin's case. *See State v. Martin*, 287 So.3d 355, 373 (Ala. Crim. App. 2017). Regarding James Taylor's statements, Major Calhoun was one of the officers who interviewed Taylor and typed and signed the notes from that interview. *Id*. at 367. Regarding the gas can, Hammoleketh's sister told Major Calhoun she had seen the can in Hammoleketh's car. *Id*. at 361. Major Calhoun was linked with a problematic confession Martin supposedly gave to another inmate while he was incarcerated that the State used at Martin's first trial. *Id*. at 364-65. More broadly, Major Calhoun oversaw the discovery in Martin's case, and his testimony at the Rule 32 proceedings was found to be inconsistent and unreliable. *Id*. at 362, 367. Even Martin acknowledges that Calhoun "was the key architect of the State's misconduct." (Doc. 32 at 38).

Of course, other officers were involved in Martin's investigation too, but the primary source of the *Brady* violations seems to have been Major Calhoun. And the trial court would have understandably been concerned with allowing Martin to take conduct that appears largely attributable to one person—Major Calhoun—and use that conduct to attack the testimony of every

---

[2] Because Martin has not satisfied AEDPA's requirements, his insistence that the Report and Recommendation should have included a *Brecht* analysis fails. (Doc. 32 at 20) (citing *Brecht v. Abrahamson*, 507 U.S. 619 (1993)). A federal court must deny habeas relief to a petitioner who has not satisfied AEDPA and *Brecht*. *Brown v. Davenport*, 596 U.S. 118, 134 (2022). Again, because Martin cannot prevail under AEDPA, his petition fails without the need for a *Brecht* analysis.

law enforcement witness who testified at Martin's second trial. The Court cannot agree with Martin that the trial court lacked justification for entering the Preclusion Order.

**C. The State's objections are overruled.**

The State makes only two brief objections to the Report and Recommendation. (Doc. 33). Both are unpersuasive. First, the State objects to how the Magistrate Judge presented the procedural history of Martin's state postconviction proceedings, in particular the Magistrate Judge's observation that Martin's Rule 32 proceedings "revealed that, prior to Martin's first trial, the State [] violated *Brady*" in several ways as outlined in the state court record. (Doc. 27 at 4). In the State's view, the only *Brady* violations that were "revealed" were the ones involving statements made by James Taylor because those were the *Brady* issues the Alabama appellate courts specifically addressed on appeal. The Court does not find merit in this objection. The Rule 32 court specifically found the State suppressed the material evidence summarized in the Report and Recommendation, and those findings were not limited to James Taylor's statements. (*See* Doc. 16-54, *State of Alabama v. Martin*, No. CR-12-2099 at 3 (Ala. Crim. App. Dec. 12, 2014) (listing the Rule 32 court's specific findings of evidentiary suppression)). Just because the Alabama appellate courts focused on one area of these *Brady* violations on appeal does not disturb the Rule 32 court's fact finding about the other *Brady* violations.

Second, the State reasserts that Martin's Confrontation and Complete Defense claims were not properly exhausted in the Alabama state courts, and they are procedurally defaulted here. (Doc. 33 at 5-9). The State's argument is not supported by the record, and the objection is overruled. As analyzed in the Report and Recommendation, Martin presented his Confrontation and Complete Defense claims throughout each level of the Alabama courts, thereby properly exhausting them. (Doc. 27 at 23-24). The Court agrees with and adopts the Magistrate Judge's analysis of this issue.

## II. CONCLUSION

After due and proper consideration of the issues raised, and a *de novo* determination of those portions of the recommendation to which objection is made, the Petitioner's and the Respondent's objections are **OVERRULED** and the Report and Recommendation of the Magistrate Judge (Doc. 27) is **ADOPTED** as the opinion of this Court. Accordingly, it is **ORDERED** that George Martin's petition for a writ of habeas corpus brought pursuant to 28 U.S.C. § 2254 is **DENIED** and **DISMISSED** with prejudice as unexhausted, procedurally defaulted, and/or lacking merit for the reasons explained in the Report and Recommendation and this Order. Additionally, Petitioner's request for an evidentiary hearing is **DENIED**.

Finally, the Court determines that Petitioner is entitled to a Certificate of Appealability on the following issues: (1) whether the State waived any exhaustion defense to the Sufficiency Claim by acknowledging that the claim "was presented on direct appeal" in its response to the petition; (2) whether Martin exhausted his Sufficiency Claim in state court by bringing state law claims based on the same "reasonable doubt" standard applicable to federal claims; (3) whether, if the Sufficiency Claim was exhausted, the Alabama courts' conclusion that the State sufficiently proved that Martin committed murder for pecuniary gain was contrary to, or involved an unreasonable application of, clearly established federal law or was based on an unreasonable determination of facts in light of the evidence; (4) whether the Alabama courts' decision to uphold the Preclusion Order was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States, specifically the Confrontation Clause of the Sixth Amendment; and (5) whether the Alabama courts' decision to uphold the Preclusion Order was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States, specifically the

Sixth and Fourteenth Amendments of the Constitution and the ensuing right to present a complete defense.

A separate judgment will issue pursuant to Fed. R. Civ. P. 58.

**DONE** and **ORDERED** this the 20th day of May, 2024.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES DISTRICT JUDGE